IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| WILL JESTER and ELLIE JESTER<br>　　　　　　Plaintiff,<br>　　　v.<br>INNOPOWER, INC., ACADEMY LTD.<br>d/b/a ACADEMY SPORTS +<br>OUTDOORS, JOHN DOE<br>CORPORATION,<br>　　　　　　Defendants. | Case No. 3:25-cv-00104-CDL |

## **ORDER FOR ESI DISCOVERY PROTOCOL**

Before the Court is the Parties' Joint Motion for Entry of ESI Protocol for which the Parties submitted a Proposed Order setting forth their agreed upon ESI Protocol. **The Court reviewed the protocol. Where the parties disagreed on a provision for the ESI protocol, the Court reviewed each side's proposed language and decided how to resolve each dispute. Further briefing is unnecessary. The Court notes that in several places, the parties anticipated that they may ask the Court to resolve potential future disputes related to this protocol. The parties are reminded that they are expected and encouraged to resolve any disputes without intervention from the Court. They should not expect the Court to expedite any rulings regarding their disputes.**

WHEREAS, Plaintiffs Will Jester and Ellie Jester ("Plaintiffs") and Defendants Innopower, Inc. and Academy Ltd. d/b/a Academy Sports + Outdoors ("Defendants") are engaged in discovery proceedings in the above-captioned civil

action (the "Lawsuit"), and counsel for the Parties have engaged in substantive discussions regarding electronically stored information ("ESI");

WHEREAS, the Parties agree that this Joint Motion for Entry of ESI Discovery Protocol (the "Protocol") in no way alters the Parties' abilities to produce documents and/or raise objections concerning the production of information, consistent with the Federal Rules of Civil Procedure, the Local Rules of this Court, and other applicable law;

WHEREAS, the Parties have agreed to and submitted the Protocol

NOW, THEREFORE, the following procedures govern the search, collection, review, culling, and production of electronically stored information and other discoverable materials ("Discoverable Information") in this action.

## I.    **GENERAL PROVISIONS**

A.    **General:** The procedures and protocols outlined herein govern the production of Discoverable Information by all parties to the Lawsuit, whether they currently are involved or become so in the future (collectively, the "Parties"). The Parties shall act in good faith to comply with this agreed-upon Protocol for the production of Discoverable Information and to resolve any differences concerning compliance with the Protocol. If the Parties are unable to reach

agreement, the Parties shall submit any dispute to the Court for resolution.

B.   **ESI:** The term "ESI" carries the meaning consistent with Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

C.   **Not Reasonably Accessible ESI:** The Parties agree that the following sources of ESI need not be searched or produced by the Parties in discovery except upon a showing of good cause

1.   Voicemail, except for voicemail, if any, that in the ordinary course of business is converted to text and forwarded to the recipient's email account.

2.   Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts; for such files however, the Producing Party must disclose them on an Exception Log, described *infra*.

3.   Residual, deleted, fragmented, damaged, temporary, or ephemeral data, for example:

   a) Random access memory (RAM);

   b) Corrupt files; for such files however, the Producing Party must disclose them on an Exception Log, described *infra*.

   c) Temporary files, including "histories," cookies, or caches; or

3

d) Server, system, or network logs.

D.   Definitions

1.   **"Custodial ESI":** The phrase Custodial ESI refers to ESI associated with a particular individual, such as email authored or received by a Document Custodian, on a Document Custodian's cell phone.

2.   **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations — stored in any medium from which information can be obtained.

3.   **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

4. **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

E. **Production Deadline:** Defendants must produce the additional ESI by June 19, 2026.

## II. <u>**CUSTODIANS**</u>

A. **Custodians:**

1. For Custodial ESI that is not obtained from a Custodian's device, the producing party will disclose the sources for the ESI: e.g., Slack, Teams, WeChat, WhatsApp, etc.

2. Defendant Academy will search and produce ESI from the following custodians:

a) Travis Schaefer

- In addition to messaging ESI such as WeChat, Slack, iMessage, WhatsApp, and Teams, that will be obtained for all custodians if available, Mr. Schaefer's SMS/MMS messages will be searched.[1]

---

[1] The Parties have reserved the right to demand that the SMS/MMS messages of other custodians be gathered and searched subject to this protocol.

    b) Austin McCurry

    c) Brian Casagrande

    d) Keith Shelton

    e) Courtney Leskovsky

    f) Chantelle Alexander (to the extent there is ESI for her)

3. Defendant Innopower will search and produce material from the following custodians:

    a) Rob Butcher.

- In addition to messaging ESI such as WeChat, Slack, iMessasge, WhatsApp, and Teams, that will be obtained for all custodians if available, Mr. Butcher's SMS/MMS messages will be searched. [1]

    b) Kai Ye

    c) Helena Ren (to the extent any Defendant has possession, custody, or control over any of her ESI).[2]

    d) Betty Song (to the extent any Defendant has possession, custody, or control over any of his ESI).[2]

---

[2] Plaintiffs have reserved the right to demand that the ESI of the manufacturer of the subject treestand be gathered and searched subject to this Protocol, to the extent that any Defendant has possession, custody, or control over the manufacturer's ESI.

e) Karl Zheng (to the extent any Defendant has possession, custody, or control over any of his ESI).[2]

4. Defendant Academy will search and produce ESI from the following non-custodial data sources:

a) The repository(ies) for the information associated with Defendant Academy's online complaint portal: https://www.academy.com/help/contact-the-academy-customer-service-team.

5. Defendant Innopower will search and produce ESI from the following non-custodial data sources:

a) The repository for the information associated with online complaints.

6. Defendants will provide a list of non-custodial data sources by June 5, 2026.

7. Defendants will gather and search archived emails. Regarding other archived sources, discovery will continue to be guided by FRCP 26(b)(2)(B). Defendants reserve the right to contend that certain, specific ESI is not reasonably accessible because of undue burden or cost. For any such ESI, Defendants must identify the ESI and explain why it is not reasonably accessible

by June 5, 2026.  If Plaintiffs have a good faith, reasonable basis for disputing the contention, the parties must meet and confer to resolve their dispute within three days.  The parties are expected and encouraged to resolve any disputes without any intervention from the Court.

8.    Plaintiffs Will Jester and Ellie Jester will search and produce all non-privileged ESI from the following custodial and non-custodial data sources to the extent within their possession, custody, or control:

a)  Mr. and Mrs. Jester's Messaging ESI such as WeChat, Slack, WhatsApp, iMessage and Teams

b)  Mr. and Mrs. Jester's SMS/MMS messages.

c)  Mr. and Mrs. Jester's email accounts, cloud storage repositories, social media accounts, photo/video repositories, or messaging applications that were used to communicate regarding the subject incident, Tree Stand, climbing sticks, safety equipment, hunting activities, alleged injuries, damages, or this litigation.

III.    **GENERAL PRODUCTION FORMAT PROTOCOLS**

A.    **PRODUCTION FORMAT:** ESI shall be produced in reasonably usable standard industry formats. This will include TIFF images with associated image and metadata load files and extracted/OCR text. Appendix 1 provides additional information for the production format and files.

B.    **TIFFs:** All production images will be provided as single page TIFFs of at least 300 dpi resolution or in the manner and resolution in which they are maintained. Each image will use the Bates number of the first page of the document as its unique file name. To the extent reasonably accessible and reasonably usable, tracked changes, comments, and similar visible annotations ordinarily viewable in the native file may be produced either in TIFF image format or native format.

C.    **Scanned Documents:** For scanned documents, the Parties agree that Discoverable Information will be produced in the imaged format set forth in Section III.A hereto. When scanning paper documents, the parties shall undertake reasonable efforts to ensure that distinct documents can be separated and are not merged into a single record, and conversely that single documents are not split into multiple records (i.e., the parties shall attempt to logically unitize scanned hard copy

documents). This provision does not apply to documents scanned in prior to the entering of this motion if they have been produced.

D.    **Native Files:** The Parties agree that Discoverable Information shall be produced in accordance with Section III.A hereto. Subsequent to the production, however, for any Discoverable Information that is not already produced in native format, the Requesting Party may, on a showing of particularized need, request from the Producing Party that it be produced in native format according to the following protocol:

1.    The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format. The Requesting Party also shall provide the reasons for the request.

2.    Within one (1) week, the Producing Party shall produce the native files, or it may object to the demand as unreasonable as follows:

a)  The Producing Party will respond in writing, setting forth its objection(s) to the production of the requested native format files.

b)  Within three (3) business days of the objections, the Parties will meet and confer regarding the request and corresponding

objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court within three (3) business days of the meet and confer by joint motion that provides each party with two (2) pages to state its position. **The parties are expected and encouraged to resolve any disputes without intervention from the Court, and they should not expect the Court to expedite any rulings on their disputes.**

E.    **Production Media:** The Producing Party may produce Discoverable Information via a secure file transfer mechanism and/or on readily accessible, computer or electronic media as the Parties may agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.  If the Discoverable Information is produced via Production Media, it must be produced by the deadline provided above.

F.    Bates Numbering

1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2)

11

maintain a constant length (0- padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

2. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

3. The producing party will brand all TIFF images with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image.

G. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business must be preserved. For example, if a party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail. The parties agree that "pointers" or hyperlinks to internal files (e.g., SharePoint, OneDrive, Google Drive) shall be treated as attachments and produced as part of the document family.

H. **Production of Email Chains:**. If a responsive email within a thread is produced, earlier emails contained within the thread need not be

separately produced if they are wholly duplicative, unless (a) responsive content exists in the earlier emails or (b) the earlier emails contain unique attachments, a different distribution list, or different metadata that is not fully captured in the thread's most inclusive responsive email.

I.    **De-duplication:**

1.    Each Defendant may de-duplicate across its own custodians but cannot de-duplicate against the ESI produced by another Defendant or third party.

2.    If a producing party elects to de-duplicate horizontally, all custodians who were in possession of a de-duplicated document must be identified in the CustodianOther metadata field. Additionally, all BCC recipients whose names would have been included in the BCC metadata field but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field. In the event of rolling productions of documents or ESI items, the producing party will supplement the load files with updated CustodianOther and BCC information as needed.

3.    Duplicates may be identified using industry-standard hash value methodologies, including MD5 or SHA-1.

J.      **Metadata Fields and Processing:**

1.      **Time zone:** ESI items shall be processed in a manner that preserves their existing time, date, and time-zone metadata (e.g., the email of a Document Custodian located in Pennsylvania will be processed as Eastern Time, while a Document Custodian located in California will be processed as West Coast Time).

2.      **Auto date/time stamps:** ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3.      The parties are not obligated to manually populate any of the metadata fields if such fields cannot be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), (h) AttachCount, (i) AttachName, (j) PGCount, and (k) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

4.      Defendants shall produce all metadata associated with a given file to the extent such metadata is reasonably extractable and

accessible, ensuring that the full administrative and system-level context of each document is preserved. If the producing party, however, withholds any metadata field, said party must provide the receiving party with a good faith, written representation describing the field that is being withheld. The parties will meet and confer in good faith to the extent that additional issues arise.

K.  **Production of Native Items:** The following files shall be produced in native format presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format.

L.  **Redaction:**

1.  The parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated, except in the case of personal database files, which shall be governed by ¶ IV(C), *supra*. Any unaffected metadata fields shall be provided. For example, if attorney-client privilege requires that the BCC field of a document needs to be redacted,

all other available data fields specified in shall be provided and the redacted metadata fields will be clearly indicated.

2.  If the items redacted and partially withheld from production are PowerPoint-type presentation decks or Excel-type spreadsheets as addressed in ¶ IV(C), *supra*, and the native items are also withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. To the extent the producing party withholds hidden fields, hidden rows or columns, formulas, speaker notes, comments, annotations, tracked changes, embedded data, or other non-visible information, the producing party shall identify that such information has been withheld. Any request for production of such information shall be subject to the standard of responsive and the parties shall meet and confer regarding the request. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes, if included within the PowerPoint. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes. The producing party shall

also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

M.   **Exception Logs:** ESI that cannot be reviewed, produced and/or imaged because of technical issues should be identified as exception files and included on a log that lists the file name, custodian, and reason for exception ("Exception Log"): for example, corruption, unavailable password protection, proprietary software, or other technical issues. The producing party shall provide an updated copy of this log to the receiving party a final copy of the log upon completion of a document production. If the receiving party requests production of any files listed on the exception log, the parties will meet and confer on a reasonable and cost-effective means for attempting to provide the requested files.

## IV.   <u>SEARCH TERMS FOR COLLECTING ELECTRONIC DOCUMENTS</u>

A.   **Initial Search Methodology:** The Parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms and protocols in advance of any search to cull Document Custodians' ESI. With the objective of limiting the scope of review and production,

and thereby reducing discovery burdens, the parties shall meet and confer on the following topics by the date indicated:

1. Each Party shall make a reasonable and diligent effort to search for and collect reasonably accessible, responsive, and relevant ESI from the custodial and non-custodial data sources identified by the Parties, including Custodians' email accounts, messaging platforms, local and cloud-based storage locations, and electronic devices utilized during the relevant time period, as well as the Non-Custodial Records.

2. Within three business days after the execution of a search using agreed-upon search terms, the producing party shall provide a Search Term Hit Report. To the extent reasonably available through the producing party's review platform or vendor tools, the report shall identify the search terms used and the corresponding document hit counts. The parties shall meet and confer in good faith regarding any concerns relating to the search methodology, burden, proportionality, or proposed modifications to the search terms.

B. **Addition or Deletion of Search Terms After Initial Search Term Negotiation:** If after the completion of the initial search methodology

process outlined above in ¶ IV(A), any party demands that any search terms should be added to or removed from the initial search term list, such party shall advise the other party of the proposed additions or deletions within two (2) business days of receiving the Search Term Hit Report. If the parties cannot agree on the addition or deletion within four (4) business days, the parties shall bring the matter to the Court via a joint motion that provides Plaintiffs and Defendants each two (2) pages to lay out their position. **<u>The parties are expected and encouraged to resolve any disputes without intervention from the Court, and they should not expect the Court to expedite any rulings on their disputes.</u>**

C. **Non-Custodial ESI:** The parties will meet and confer regarding the appropriateness of using search terms for culling centralized data sources (i.e., non-Document Custodian ESI), including, for example, determining whether production of particular network folders without the use of search terms is more appropriate than culling such documents with search terms.

D. **Other Methods to Streamline Culling of ESI:** The parties agree to meet and confer in good faith about any other technology or process that a producing party proposes to use to streamline the document

production requested by a receiving **party** in this case (e.g., email threading, near de-duplication, any technology assisted review or advanced analytic (i.e., non-Boolean) automated "filtering" or "culling" application to identify items which are potentially responsive or which are to be excluded from its production).

## V.    SPECIAL ESI ISSUES

A.    **Password-Protected or Encrypted Files:** With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps based on industry standards to break the protection so that the document can be reviewed and/or produced. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to the parties' document requests, remain for a particular custodian after such reasonable efforts have been made, the producing party shall let the receiving party know the total number of such documents and each individual producing party shall meet and confer with the receiving party.

B.    **Hidden text:** ESI items processed after the execution date of this Production Stipulation and Order shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

20

C.   **Embedded Objects:** Objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents and treated like attachments to the document. Other objects embedded in documents shall be produced as native files.

D.   **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

VI.   PARAMETERS FOR CUSTODIAL ESI COLLECTION

A.   For each custodian identified by the Parties as a Document Custodian, the Parties shall do the following:

1.   **Email:** Unless the Producing Party establishes good cause to the contrary, the Producing Party shall make reasonable efforts to collect reasonably accessible responsive emails sent to or received by a Document Custodian from the data sources identified by the Parties during the relevant time period.

2.   **Cloud Based ESI:** To the extent a Document Custodian used cloud-based document storage services for work-related purposes, the Parties shall make reasonable efforts to collect and

produce reasonably accessible, responsive ESI within their possession, custody, or control. If a Producing Party is unable to obtain responsive cloud-based ESI for a Document Custodian after reasonable efforts, the Parties shall meet and confer in good faith regarding the nature of the information, the efforts undertaken to obtain it, and whether any additional collection efforts are proportional to the needs of the case.

## VII.  CLAIMS OF PRIVILEGE AND REDACTIONS

A.  **Production of Privilege Logs:** For any document withheld in its entirety or produced in redacted form on the basis of privilege or protection, the producing party shall produce a privilege/redaction log in Excel format or another reasonably usable format that permits electronic sorting and searching. A producing party shall produce privilege/redaction logs at reasonable intervals during the course of production or within fourteen (14) days following substantial completion of document production. A party asserting privilege over an email chain shall identify the specific privileged portions of the chain on the privilege log. The Protective Order entered in this matter shall govern all documents and information produced pursuant to this Protocol.

22

B.   **Challenges to Privilege Claims:** Following the receipt of a privilege/redaction log, a receiving party may identify, in writing, the particular documents that it believes require further explanation. Within fourteen (14) days of such an identification, the producing party must respond to the request. If a party challenges a request for further information, the parties shall meet and confer, in person or via teleconference, to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

C.   **"Relevancy" Redactions:** The parties shall not make redactions solely on the purported relevancy of a document, except that the parties may redact social security numbers, tax identification numbers, employee financial information, financial account numbers, employee payroll information, and protected health information.

D.   All other issues of privilege, including the production of privileged or protected documents or information, shall be governed by the Protective Order entered by the Court in this litigation. Officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

## VIII.   MISCELLANEOUS PROVISIONS

A.   **Objections Preserved:** Nothing in this protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

B.   **Modifications:** Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI. No party shall modify the date or time as contained in any original ESI.

C.   **Production of Structured Data.** To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties shall meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make

24

reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

D.   If a party believes that responsive ESI no longer exists in its original format, or is no longer retrievable, the responding party shall explain where and when it was last retrievable in its original format, and if it is not possible to explain such, then the party must explain why, and disclose the circumstances surrounding the change in status of that ESI, including the date of such status change, the person or persons or entity responsible for such state change, the reason or reasons such ESI is no longer retrievable in that format, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.

**SO ORDERED**, this 22nd day of May, 2026.

s/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

## Appendix 1: File Formats

**Image Load Files**

1.      The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.LFP).

2.      The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

3.      There should be one row in the load file per TIFF image.

4.      Every image in the delivery volume should be contained in the image load file.

5.      The image key should be named the same as the Bates number of the page.

6.      Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

7.      Files that are the first page of a logical document should include a "D" where appropriate. Files that are the first page of an attachment to an e-mail should include a "C" where appropriate. Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

    IM,VN00000001,D,0,@29502601;295026001\0000;VN00000001.TIF;2

    IM,VN00000002, ,0,@29502601;295026001\0000;VN00000002.TIF;2

    IM,VN00000003, ,0,@29502601;295026001\0000;VN00000003.TIF;2

    IM,VN00000004, ,0,@29502601;295026001\0000;VN00000004.TIF;2

    IM,VN00000005,D,0,@29502601;295026001\0000;VN00000005.TIF;2

    IM,VN00000006, ,0,@29502601;295026001\0000;VN00000006.TIF;2

IM,VN00000007, ,0,@29502601;295026001\0000;VN00000007.TIF;2

IM,VN00000008, ,0,@29502601;295026001\0000;VN00000008.TIF;2

IM,VN00000009,D,0,@29502601;295026001\0000;VN00000009.TIF;2

IM,VN00000010, ,0,@29502601;295026001\0000;VN00000010.TIF;2

8.    Opticon Delimited File:

MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3

MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,,

MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,Y,,,,

MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,,

9.    Summation DII File:

@C HASIMAGE YES

@T EPRG036023 2

@DD:\FILES\PRODUCTION\CD0004\VOL0011\Images

EPRG036023.tif

EPRG036024.tif

10.    Concordance Delimited Files:

þBegDocþþEndDocþþBegAttachþþEndAttachþþPgCountþþCustodianþ

11.    The data load file should use standard Concordance delimiters:

Comma - ¶ (ASCII 20);

Quote - þ (ASCII 254);

Intra-Field Newline - ® (ASCII174).

12. The first record should contain the field names in the order of the data.

13. Date fields must be produced in a reasonably intelligible format. Use carriage-return line-feed to indicate the start of the next record.

14. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.

15. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT).

16. The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

17. DAT file shall be in appropriate UTF-8 with BOM format, including all text fields are wrapped in double quotes "like this") to prevent data corruption.