IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

WILL JESTER and ELLIE JESTER

      Plaintiff,

      v.

INNOPOWER, INC., ACADEMY
LTD. d/b/a ACADEMY SPORTS +
OUTDOORS, JOHN DOE
CORPORATION,

      Defendant.

Case No. 3:25-cv-00104-CDL

**<u>DEFENDANTS', INNOPOWER, INC. AND ACADEMY LTD. D/B/A
ACADEMY SPORTS + OUTDOORS, MEMORANDUM IN SUPPORT OF
MOTION FOR SANCTIONS DUE TO PLAINTIFFS' SPOLIATION OF
CRITICAL EVIDENCE</u>**

COME NOW Defendants, Innopower, Inc. and Academy Ltd. d/b/a Academy Sports + Outdoors (collectively, "Defendants"), by and through their undersigned counsel, and respectfully submit this Memorandum in Support of Defendants' Motion for Sanctions Due to Plaintiffs', Will and Ellie Jester ("Plaintiffs"), Spoliation of Critical Evidence.

Plaintiff Will Jester seeks recovery for injuries he sustained while using an allegedly defective Academy-sold Game Winner Oversized EZ Set Hang-on Tree Stand ("Hang-on Tree Stand"). As set forth below, Plaintiffs undisputedly failed to preserve critical physical evidence central to the claims and defenses in this action,

1

including the Hang-on Bracket, which contained affixed warnings and instructions regarding installation, securement, and use, and the Cam Buckle Strap with its two (2) corresponding hooks ("Cam Strap"), components materially relevant to the condition, use, and configuration of the subject Hang-on Tree Stand at issue in this litigation.

Accordingly, Defendants respectfully request that the Court preclude Plaintiffs from offering fact testimony, expert testimony, evidence, or argument concerning: (1) the condition, warnings, configuration, securement, operation, or alleged failure of the missing Hang-on Bracket Assembly and Cam Strap; (2) any alleged design, manufacturing, or warning defect relating to those components; and (3) the adequacy of the warnings, instructions, installation, securement, operation, or performance of those components. Because such relief would foreclose Plaintiffs' ability to establish essential elements of their claims, Defendants further respectfully request that the Court dismiss Plaintiffs' claims with prejudice. Alternatively, Defendants request an adverse inference instruction that the missing Hang-on Bracket Assembly, Cam Strap, and associated warning labels would have contained evidence unfavorable to Plaintiffs' claims and favorable to Defendants' defenses.

## I.    Statement of Facts & Introduction

This action arises from an August 19, 2023, incident in Culloden, Georgia, in which Plaintiffs allege an Academy-sold Game Winner Oversized EZ Set Hang-on

Tree Stand was defective and caused Mr. Jester to fall. Dkt. No. 33.

Prior to the incident, Mr. Jester personally removed, relocated, and reinstalled the Hang-on Tree Stand. See Declaration of Miguel Lozada "Lozada Decl.", ¶ 2, Ex. A, Jester Dep. 103:13-19, 106:24-108:25, 117:7-19. Mr. Jester testified that he modified the Hang-on Tree Stand by installing an aftermarket orange ratchet strap in conjunction with the components supplied with the product, despite the user manual's express warning that modifications, additions, substitutions, or attachments to the Hang-on Tree Stand or its assemblies could result in serious injury or death. Lozada Decl., ¶ 2, Ex. A, Jester Dep. 120:1-7, 131:16-20.[1]

In addition to the issues surrounding Mr. Jester's improper installation of the Hang-on Tree Stand, he also admittedly failed to follow instructions on its proper use. Lozada Decl., ¶¶ 2, 14, Ex. A, Jester Dep. 102:20-103:1; Ex. M Jester Dep.

---

[1] WARNING! Do not remove, modify any portion or otherwise mechanically modify this product or its assemblies in any manner. Make certain that all parts are used in the assembly of this product. Parts are designed and tested to work together. Modification, additions, misuse, part omission or substitution shall immediately void your factory warranty and may result in serious injury or death! If you suspect a parts) is missing and/or damaged, immediately contact Innopower inc. at (949) 262-3416 for replacement of missing or detective parts, Never modify your stand in any way by making repairs, altering, omitting, adding or attaching anything to It. ALWAYS USE GENUINE FACTORY AUTHORIZED INNOPOWER ING. REPLACEMENT PARTS. USE OF ANY REPLACEMENT PARTS OTHER THAN GENUINE INNOPOWER INC. PARTS VOIDS YOUR WARRANTY AND RELIEVES INNOPOWER INC. OF ANY RESULTANT LIABILITIES AND MAY RESULT IN SERIOUS INJURY OR DEATH! Lozada Decl., ¶ 12, Ex. K at 4.

10:19-11:1, 44:4-9, 45:16-46:21.  For example, Mr. Jester admitted that, despite knowing how important it was to remain continuously attached to the tree while above ground level, he did not follow the repeated manufacturer warnings and instructions to use a fall-arrest harness, lifeline, or linesman's belt. Lozada Decl., ¶¶ 2, 14, Ex. A, Jester Dep. 102:20-103:1, 123:25-125:17, Ex. M Jester Dep. 10:19-11:1.

Approximately eight (8) days after the incident, plaintiff's cousin, Cody Durden, returned to the scene and photographed the Hang-on Tree Stand in an undisturbed condition. Lozada Decl., ¶ 3, Ex. B, (citing Durden Dep. 47:16-:18). Those photographs depict the complete Hang-on Bracket assembly attached to, and present on, the Hang-on Tree Stand following the incident. Lozada Decl., ¶ 11, Ex. J.

Approximately six (6) months after the incident, Durden and Joseph Dukes, another of Plaintiff's cousins, retrieved the Hang-on Tree Stand from the scene at the direction of Plaintiffs' counsel for use in this litigation. Lozada Decl., ¶¶ 3 & 5, Ex. B, Durden Dep. 78:13-24, Ex. D, Kelly Dep. 31:25-32:5).[2]

Mr. Dukes testified that the Hang-on Tree Stand remained "as-is from the day of the incident" and that neither he nor Mr. Durden modified it during retrieval.

---

[2] Cody Durden and Joseph Dukes were present at the time of the incident. See Lozada Decl., ¶ 2, Ex. A, (citing Jester Dep. 98:13-14).

Lozada Decl., ¶ 4, Ex. C, Dukes Dep. 89:17-90:2. After its retrieval, the Hang-on

Tree Stand was transferred through at least three individuals acting on Plaintiffs'

behalf, including Mr. Durden, Wanda Kelly, and Joseph Dukes, before being

delivered to Plaintiffs' counsel. Lozada Decl., ¶¶ 2, 3, & 5, Ex. A, Jester Dep. 132:23-

133:1; Ex. B, Durden Dep. 81:10-82:18; Ex. D, Kelly Dep. 30:10-15, 32:1-5.

On October 16, 2025, Plaintiffs produced the Hang-on Tree Stand for

inspection by Defendants' experts. Lozada Decl., ¶ 10, Ex. I, Saunders Report at 29.

It was during that inspection that Defendants first learned the Hang-on Bracket

Assembly and Cam Strap had not been preserved and were no longer available for

examination. *Id*. Despite placing the configuration, securement, warnings, and

performance of the Hang-on Tree Stand directly at issue, Plaintiffs failed to preserve

its Hang-on Bracket and Cam Strap, key components of the tree stand installation.

*Id*. Not only are these components essential to the Hang-on Tree Stand's assembly

and operation, but Plaintiffs' experts also challenge their adequacy despite never

having examined either component. Lozada Decl., ¶¶ 8-9, Exs. G-H, Waters Report

at 15-16, 25-26; Oduor Report at 6-8.[3] Critically, the Hang-on Bracket could not

have become separated from its ratchet strap through normal use, the subject

---

[3] The Hang-on Bracket connects the Hang-on Tree Stand to the tree through the ratchet strap assembly and contains warnings regarding installation and use, while the Cam Strap includes two hooks that attach to the rear platform of the Hang-on Tree Stand as part of the securement system. Lozada Decl., ¶ 12, Ex. K, Owner's Manual at 1-8 & 18.

incident, shipping, or storage; rather, it required affirmative human intervention to remove it from the assembly. Saunders Decl., ¶ 2.

There is no dispute that the Hang-on Bracket existed and was present immediately following the alleged incident. Plaintiffs' own photographs depict the Hang-on Bracket system in place prior to its removal and unexplained disappearance. Lozada Decl., ¶ 11, Ex. J. Likewise, while Mr. Jester claims he used the Cam Strap, the Cam Strap does not appear in any post-incident photographs and was not preserved for inspection. Lozada Decl., ¶¶ 10-11, Exs. I-J, Saunders Report at 29.

Thus, although both components are central to Plaintiffs' liability theories, neither is available for examination. Lozada Decl., ¶ 10, Ex. I, Saunders Report at 29.

## II.    Legal Standard

In federal courts, "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Compass Chem. Int'l, LLC v. True N. Prods., LLC*, No. 1:09-CV-3491-RLV-WEJ, 2011 U.S. Dist. LEXIS 163485 (N.D. Ga. Feb. 15, 2011).[4] Even the mere threat of a lawsuit places a party

---

[4] Quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) and citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see also Phillips v. Harmon*, 297 Ga. 386, 39394, 774 S.E.2d 596, 603 (2015) (under Georgia law,

on notice of its duty to preserve evidence. *See Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 545 (2008). Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009)[5].

When a party has spoliated evidence—intentionally or not—"[s]anctions function to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process." *Id*. For this reason, it is well-recognized that courts in this Circuit have "broad discretion . . . to impose sanctions" in cases where spoliation has occurred. *Kraft Reinsurance Ir. Ltd. v. Pallets Acquisitions, LLC*, 845 F. Supp. 2d 1342, 1358 (N.D. Ga. 2011) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005))[6]. Potential sanctions for spoliation of evidence include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumptions against the spoliator." *Id*.

While spoliation in any litigation is problematic, it is doubly so in product

---

a spoliation claim can be pursued where the spoliating party was under a duty to preserve evidence).

[5] Quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *see also Bridgestone/Firestone v. Campbell*, 258 Ga. App. 767, 768 (2002).

[6] "A court's power to impose sanctions for spoliation flows from its inherent power to manage its affairs and achieve an orderly and expeditious disposition of cases." *Woodard v. Wal-Mart Stores E., LP*, 801 F. Supp. 2d 1363, 1371 (M.D. Ga. 2011) (citing *Flury*, 427 F.3d at 944).

liability cases: when a plaintiff fails to preserve the allegedly defective product before the defendant has an opportunity to inspect it, the defendant is estopped from testing the plaintiff's defect theory and, correspondingly, defending against the claims. *Flury*, 427 F.3d at 940-42. Thus, rather than being merely punitive, spoliation sanctions in these cases are necessary to the fair administration of justice and to remedy the prejudice caused by the loss of critical evidence.

In fashioning the appropriate sanction, courts consider the following five factors:

> (1) whether the [party] was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the [party] acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded. *Flury*, 427 F.3d at 945.

*See also*, Oil *Equip. Co. v. Modern Welding Co.*, 661 F. App'x 646, 652 (11th Cir. 2016) (courts should primarily consider the extent of the prejudice caused by the loss of evidence, whether that prejudice can be cured, and the culpability of the party responsible for the spoliation in determining sanctions). Here, all five factors weigh strongly in favor of the defense.

## III.    Argument

### A. <u>Plaintiffs Failed to Preserve Critical Evidence Despite a Clear Duty to Do So</u>

As a threshold matter, Plaintiffs plainly had a duty to preserve the Hang-on Bracket and Cam Strap once litigation became reasonably foreseeable. *See Compass*

8

*Chem. Int'l*, LLC, 2011 U.S. Dist. LEXIS 163485, at *18-19[7]. That duty arose no later than the time the Hang-on Tree Stand was retrieved and intentionally preserved for purposes of this litigation at the direction of Plaintiffs' counsel. *Id*.; Lozada Decl., ¶ 3, Ex. D, Kelly Dep. 31:25-32:5.

The evidence leaves no genuine dispute that the Hang-on Bracket assembly existed after the alleged incident and remained attached to the Hang-on Tree Stand. Lozada Decl., ¶ 11, Ex. J. Photographs taken by Cody Durden approximately eight (8) days after the incident confirm that the Hang-on Bracket assembly was still attached to the Hang-on Tree Stand following the accident. Lozada Decl., ¶ 3, Ex. B, Durden Dep. 47:16-:18. Thereafter, the Hang-on Tree Stand remained in the possession of Plaintiffs and their agents until it was ultimately inspected by their expert. Lozada Decl., ¶ 5, Ex. D, Kelly Dep. 30:23-32:11. Yet, by the time that inspection occurred, the Hang-on Bracket Assembly and Cam Strap had disappeared. Lozada Decl., ¶ 10, Ex. I, Saunders Report at 29.

Having assumed a clear duty to preserve evidence essential to the claims asserted in this action, Plaintiffs failed to preserve the Hang-on Bracket assembly and Cam Strap, resulting in the disappearance of critical evidence from the Hang-on Tree Stand and depriving Defendants of any opportunity to inspect and test the missing components. *See Flury*, 427 F.3d at 946 (finding dismissal necessary where

---

[7] *See also Phillips*, 297 Ga. at 393-94; *Wal-Mart Stores*, 290 Ga. App. at 545

the defendant lost a valuable opportunity to test the plaintiff's theory and was severely prejudiced by the destruction of critical evidence); *Graff*, 310 F. App'x at 302. This is precisely the type of spoliation that warrants significant sanctions. *Flury*, 427 F.3d at 946.

### B.  <u>Plaintiffs' Spoliation Has Substantially Prejudiced Defendants</u>

The prejudice to Defendants is substantial because Plaintiffs' claims place the condition, securement, warnings, and operation of the Hang-on Bracket assembly and Cam Strap directly at issue. Lozada Decl., ¶¶ , 8-9, Exs. G-H, Waters Report at 15-16, 25-26; Oduor Report at 6-8. Plaintiff testified that he used the Cam Strap to secure the Hang-on Tree Stand. Lozada Decl., ¶ 2, Ex. A, Jester Dep. 117:15-16. Yet the Cam Strap does not appear in any post-incident photographs and was never preserved, preventing Defendants from investigating whether Plaintiffs' account of the Hang-on Tree Stand's installation is accurate. Lozada Decl., ¶¶ 10-11, Exs. I-J, Saunders Report at 29.

The missing components are indispensable to evaluating how the Hang-on Tree Stand was assembled, secured, and used. Saunders Decl., ¶ 3. Direct inspection could have revealed whether the locking knob, which secures the stand to the Hang-on Bracket after the stand is placed onto the bracket, was properly tightened; whether the assembly exhibited evidence of misuse; the placement, visibility, and presence of specific on-product labeling; and whether its condition supported Plaintiffs'

theories or Defendants' defenses. *Id*.

While the Durden photographs prove, definitively, that the Hang-on Bracket was still attached after the incident—and thus *could* have been preserved—the photographs cannot stand in for an inspection of the product component.  As the Eleventh Circuit recognized, photographs are no substitute for the "much more reliable evidence" obtained through direct inspection of the subject product. 427 F.3d at 946.[8]  Indeed, the photographs here do not reveal whether the Hang-on Bracket bore physical evidence of improper installation, misuse, alteration, or the condition of its warning label. Lozada Decl., ¶ 11, Ex. J. Only inspection of the actual components could have provided that evidence in this case, an inspection rendered impossible due to the Plaintiffs' spoliation. Saunders Decl., ¶ 4.

Plaintiffs' failure to preserve the Hang-on Bracket and Cam Strap has permanently deprived Defendants of critical components of the ratchet strap assembly at the center of this case. Because the missing components can never be recreated or examined, the resulting prejudice is permanent and the first and second *Flury* factors weigh heavily in favor of significant sanctions. 427 F.3d at 946.

### C. <u>The Missing Evidence Is Material and Its Importance Cannot Be Disputed</u>

---

[8] *See Bridgestone/Firestone North American Tire, LLC v. Campbell*, 258 Ga. App. 767, 769, 574 S.E.2d 923 (2002) ("although the existence of photographs may mitigate the loss, they are no substitute for the actual evidence") (finding that photographs did not cure the prejudice resulting from the loss of critical physical evidence).

The materiality of the missing Hang-on Bracket Assembly is not a matter of inference. Plaintiffs' own experts base their opinions on the bracket's condition, configuration, and associated warnings, yet neither was able to examine the actual component.

Plaintiffs' engineering expert, Jarrett Waters, acknowledged the Hang-on Bracket was absent during both inspections and that he was told it was unavailable. Lozada Decl., ¶ 6, Ex. E, (citing Waters Dep. 41:11-15; 68:1-13). Although Waters attempted to downplay the missing Hang-on Bracket's significance, his opinions are premised on the very component Plaintiffs failed to preserve. [9] To be sure, Waters formed opinions regarding the tree strap configuration, alleged slippage, and bracket separation—all of which depend on correct installation and use of the Hang-on Bracket—by relying on photographs rather than the component itself. Lozada Decl., ¶ 6, Ex. E, (citing Waters Dep. 83:18-84:3; 85:12-20; 125:9-12). He also testified that the subject bracket serves as the connection point between the Hang-on Tree Stand and the tree strap assembly and opined that warnings associated with the Hang-on Bracket and ratchet strap assembly were inadequate. Lozada Decl., ¶ 6, Ex.

---

[9] Although Waters testified that the Hang-on Bracket itself was not relevant to his testing, he nevertheless acknowledged that it was missing from both inspections, requested that it be produced, analyzed photographs depicting the bracket assembly, and relied on those photographs in evaluating the strap configuration shown after the incident. Lozada Decl., ¶ 6, Ex. E, (citing Waters Dep. 41:11-22, 68:1-15, 131:10-21).

E, (citing Waters Dep. 41:16-22, 164:23-165:8). Thus, far from showing that the Hang-on Bracket is immaterial, Waters' testimony confirms its significance to the issues presented in this case.

Plaintiffs' Human Factors expert, Dr. Oduor, similarly confirms the importance of the Hang-on Bracket. She opines that the surfaces and labels of the Hang-on Bracket present "an opportunity to increase warning noticeability and compliance," Oduor Report at 7, and testified that warnings are most effective where users physically interact with the product. Lozada Decl., ¶ 7, Ex. F, (citing Oduor Dep. 124:22-125:1-15, 130:2-13). Yet she did not account for the warning label affixed directly to the Hang-on Bracket. Lozada Decl., ¶ 9, Ex. H. Odour Report. As demonstrated through exemplars of the subject Hang-on Tree Stand, the Hang-on Bracket contained a warning label affixed directly to the bracket itself addressing installation, securement, and use of the component. Lozada Decl., ¶¶ 10, 13, Ex. I Saunders Report at 36, Ex. L. [10] Because the actual bracket was not preserved, Dr.

---

[10] The warning label affixed directly to the Hang-on Bracket stated: "Warning! Always follow Bracket, Hang-on, Climbing Aid and Harness Instructions & Warnings to install use and remove this product! Always use full body harness w/ lineman's climbing strap to install, use or remove this product. Always attach bracket level on tree and post facing up. Always attach and tighten locking knob to both hang-on bracket and install secondary cam buckle strap before stepping onto platform or using hang-on treestand. Never leave bracket attached to tree for more than 2 weeks (14 days) remove and store in dry location that is not exposed to outdoor elements. Do not remove label. FAILURE TO FOLLOW THESE INSTRUCTIONS CAN RESULT IN SERIOUS INJURY OR DEATH!" Lozada Decl., ¶ 10, Ex. I, Saunders Report at 36.

Oduor could not determine whether the label was present, altered, damaged, or removed. Notably, that warning addressed use of a full-body harness, installation of the secondary cam buckle strap, and tightening of the locking knob, each central to Defendants' misuse and alternative-causation defenses. Lozada Decl., ¶¶ 10, 13, Ex. I, Saunders Report at 36, Ex. L.

The prejudice here is not theoretical. It is structural. Plaintiffs seek to impose liability based on the condition and warnings of a component they no longer possess, while Defendants cannot test those opinions against the actual evidence. Accordingly, the practical importance of the missing evidence is undeniable, and the third *Flury* factor weighs heavily in favor of sanctions.*427 F.3d at 945*.

### D. **Plaintiffs' Culpability and the Risk of Unfairness Weigh Heavily in Favor of Sanctions**

The fourth and fifth *Flury* factors likewise favor sanctions. First, Plaintiffs' own photographs confirm the Hang-on Bracket assembly was attached to the Hang-on Tree Stand post-incident. Lozada Decl., ¶ 11, Ex. J. By the time the Hang-on Tree Stand was transferred through Plaintiffs' representatives, counsel, and expert for inspection, however, the Hang-on Bracket assembly and Cam Strap were gone. Lozada Decl., ¶ 10, Ex. I, Saunders Report at 29. Critically, expert review establishes that the Hang-on Bracket cannot separate from the ratchet strap system absent manual removal of the self-securing nut and bolt or untreading of a self-cinching webbing connection requiring significant manual dexterity for removal. Saunders

14

Decl., ¶ 2. In other words, the Hang-on Bracket could not simply have fallen off during its journey: someone removed it.

Second, importantly, Defendants need not establish who removed the component.[11] What matters is that the component indisputably existed after the incident, remained in Plaintiffs' chain of custody, and disappeared before expert inspection. At a minimum, the loss of this critical evidence reflects a failure to preserve evidence that Plaintiffs knew, or reasonably should have known, would be central to this litigation, resulting in substantial prejudice to Defendants' ability to evaluate and defend against Plaintiffs' claims. *See, e.g.*, *Flury*, supra. at 946 (plaintiff's negligence in failing to preserve evidence, when coupled with prejudice to defendant, warranted the most severe sanction: outright dismissal); *R.A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 182, 539 S.E.2d 873 (2000).

Lastly, the fifth *Flury* factor independently warrants sanctions because permitting Plaintiffs to present expert testimony regarding the warnings, configuration, and alleged failure of the Hang-on Bracket creates a substantial potential for abuse. Lozada Decl., ¶¶ 8-9, Exs. G-H, Waters Report; Oduor Report. Although Dr. Oduor and Mr. Waters reviewed an exemplar bracket, neither expert was able to inspect the actual post-incident Hang-on Bracket or its warning label. *Id*.

---

[11] *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 302 (11th Cir. 2009) ("Even if the plaintiffs did not act with malice when they spoliated evidence, the plaintiffs were the more culpable party and caused the manufacturers substantial prejudice.")

Nonetheless, Plaintiffs seek to present expert testimony concerning the condition, warnings, and operation of a component while simultaneously depriving Defendants of the ability to test or rebut those opinions through inspection of the actual evidence. *See* Flury, 427 F.3d at 945.

Plaintiffs, meanwhile, face no such limitation. Permitting that asymmetry to stand would allow Plaintiffs to use the absence of evidence they failed to preserve as both a sword and a shield, advancing affirmative liability theories premised on a missing component while insulating those theories from the scrutiny that physical inspection would have provided. 427 F.3d at 946. This is precisely the type of unfairness the fifth *Flury* factor is intended to prevent. *Id*.

## IV.   CONCLUSION

Accordingly, Defendants respectfully request that the Court preclude Plaintiffs from offering fact testimony, expert testimony, evidence, or argument concerning: (1) the condition, warnings, configuration, securement, operation, or alleged failure of the missing Hang-on Bracket Assembly and Cam Strap; (2) any alleged design, manufacturing, or warning defect relating to those components; and (3) the adequacy of the warnings, instructions, installation, securement, operation, or performance of those components. Because such relief would foreclose Plaintiffs' ability to establish essential elements of their claims, Defendants further respectfully request that the Court dismiss Plaintiffs' claims with prejudice. Alternatively,

Defendants request an adverse inference instruction that the missing Hang-on Bracket Assembly, Cam Strap, and associated warning labels would have contained evidence unfavorable to Plaintiffs' claims and favorable to Defendants' defenses, together with such other and further relief as the Court deems just and proper.

Dated: July 16, 2026

Respectfully submitted,

x _____

Miguel Lozada, ESQ
(*Admitted Pro Hac Vice*)
GORDON REES SCULLY MANSUKHANI, LLP
1 Battery Park Plaza, 28th FL
New York, N.Y. 10004
(212) 453-0765 (Telephone)
mlozada@grsm.com
*Counsel for Defendants INNOPOWER, INC., ACADEMY LTD. d/b/a ACADEMY SPORTS + OUTDOORS*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day of July 16th, 2026, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

**CONN LAW, LLC**
ANDREW J. CONN
Georgia Bar No. 732541
Post Office Box 8031
Savannah, Georgia 31412
(912) 373-8642 (phone)
(912) 210-5170 (fax)
andy@connlawfirm.com
Attorney for Plaintiffs

**WADE GRUNBERG & WILSON, LLC**
JONATHAN D. GRUNBERG
Georgia Bar No. 869318
729 Piedmont Avenue NE
Atlanta, GA 30308
(404) 445-8363 (tel)
(470) 970-4303 (fax)
jgrunberg@wgwlawfirm.com
Attorney for Plaintiffs

Dated: July 16, 2026

Respectfully submitted,

x _____

Miguel Lozada, ESQ

5

(*Admitted Pro Hac Vice*)
GORDON REES SCULLY MANSUKHANI, LLP
1 Battery Park Plaza, 28th FL
New York, N.Y. 10004
(212) 453-0765 (Telephone)
mlozada@grsm.com
*Counsel for Defendants INNOPOWER,*
*INC., ACADEMY LTD. d/b/a ACADEMY*
*SPORTS + OUTDOORS*

6