UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| WILL JESTER and ELLIE JESTER<br><br>Plaintiff,<br><br>v.<br><br>INNOPOWER, INC., ACADEMY LTD. d/b/a ACADEMY SPORTS + OUTDOORS, JOHN DOE CORPORATION,<br><br>Defendant. | Case No. 3:25-cv-00104-CDL |

**DEFENDANTS ACADEMY, LTD. D/B/A ACADEMY SPORTS + OUTDOORS AND INNOPOWER, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY**

COME NOW, Defendants Innopower, Inc. and Academy Ltd. d/b/a Academy Sports + Outdoors (collectively, "Defendants"), by and through undersigned counsel, and hereby oppose Plaintiffs' Motion to Exclude or Limit the Reports and Testimony of Dennis J. Seal, Ph.D., P.E. ("Dr. Seal"), George M. Saunders, Jr., P.E. ("Mr. Saunders"), C.F.E.I., and Henry David Smith ("Mr. Smith"). In support thereof, Defendants respectfully show the Court as follows:

## I. INTRODUCTION

Plaintiffs' Motion is not a Rule 702 challenge; it is a disagreement with Defendants' experts. Plaintiffs do not identify unreliable methodologies or an analytical gap warranting exclusion. Instead, they challenge the experts'

interpretation of the evidence and ultimate conclusions. Those are questions of weight for the jury, not admissibility for the Court.

The experts' qualifications and methodologies confirm as much. Dr. Seal brings decades of specialized human-factors and warnings expertise to his analysis of the product's warnings, instructions, and Plaintiff's interaction with the product. Mr. Saunders, a mechanical engineer with decades of experience investigating product performance, applied mechanical-engineering principles, the scientific method, and testing to the Tree Stand and its ratchet strap, an analysis Plaintiffs themselves acknowledge was scientific. Mr. Smith brings decades of specialized experience with tree stands, tree-stand safety, and industry practices. Each reviewed the relevant evidence and applied reliable, specialized knowledge to the facts of this case.

Plaintiffs' requested relief would require the Court to do more than assess reliability: it would require the Court to decide whose interpretation of the evidence is correct. That is not the Court's role under Rule 702. When, as here, qualified experts apply reliable principles and methods to the facts, disputes over their factual premises, reasoning, and conclusions go to weight, not admissibility. Plaintiffs can test those opinions through cross-examination and competing evidence. They cannot obtain exclusion merely because they disagree with what the experts concluded. Accordingly, Plaintiffs' Motion should be denied.

## II. ARGUMENT

Plaintiffs' Motion should be denied because it attacks what Defendants' experts concluded, not the reliability of their methodology. Each expert is qualified, applied specialized knowledge to the evidence, and offers testimony that will assist the jury in resolving issues central to Plaintiffs' liability theories.

### A. Dr. Seal Is Uniquely Qualified to Opine on the Tree Stand Warnings

Dr. Seal brings more than forty years of experience in human factors and product-safety engineering to his analysis, including firsthand experience developing the very warning standards relevant here. As a member of the original ANSI Z535 industry standards committee, he helped develop criteria governing product hazard labels, including hazard-avoidance information, signal words, graphical format, label content, symbols, and safety instructions. Lozada Decl. ¶ 2, Ex. A, Seal Report at 2-3. His opinions regarding the subject Tree Stand's warnings thus are grounded not merely by familiarity with ANSI Z535, but by decades of applying the human-factors principles underlying those standards and his direct participation in their development.

#### a. Dr. Seal's Opinions Are Supported by Reliable Methodology and Specialized Expertise

Plaintiffs' attack on Dr. Seal's methodology rests on an unduly narrow conception of human-factors analysis. The very authority Plaintiffs cite defines human factors as applying knowledge about people, including their "abilities,

characteristics and limitations," to the design of the equipment they use and environments in which they function. *See* Other Definitions of Human Factors and Ergonomics, Human Factors & Ergonomics Soc. (last visited Sept. 17, 2026) https://www.hfes.org/About/What-Is-Human-Factors-and-Ergonomics/Other Definitions-of-Human-Factors-and-Ergonomics. That is precisely the inquiry Dr. Seal undertook here.

Dr. Seal applied his specialized human-factors and safety-engineering expertise to the subject Tree Stand and evaluated the safety system as a whole—including its warnings, instructions, safety information, and available fall-protection measures—to determine whether those measures adequately communicated the identified hazards and how users could avoid them.[1] Lozada Decl. ¶ 2, Ex. A, Seal Report at 5–8. His methodology addresses the interaction between the product's warnings and safety measures and the user's recognition, understanding, and response to that information. Lozada Decl. ¶ 2, Ex. A, Seal Report at 7-8.

He applied recognized human-factors principles, including ANSI Z535 criteria and the stimulus-response model, to evaluate whether the Tree Stand's

[1] For example, Dr. Seal evaluated whether the warnings identified the fall hazard and severity of injury, provided appropriate avoidance instructions, used appropriate signal words and graphical formatting, and were positioned for recognition and comprehension by the user. He also considered the instructions requiring use of a full-body fall-arrest harness, lineman's belt, and lifeline, as well as the warnings against modifying the Tree Stand with non-OEM components. Lozada Decl. ¶ 2, Ex. A, Seal Report at 7–8, 11–13.

warnings adequately identified the fall hazard, communicated its consequences and means of avoidance, and facilitated user recognition, comprehension, and compliance. Lozada Decl. ¶ 2, Ex. A, Seal Report at 7–8, 12. He also considered the multiple layers of safety information provided with the Tree Stand, including on-product warnings, written instructions, and instructions concerning use of the full-body fall-arrest system. Separately, Dr. Seal analyzed the ratchet-strap instructions and explained why the number of ratchet revolutions cannot be evaluated in isolation, given variables such as the ratchet assembly, tree diameter, strap expansion, and weather conditions. *Id*. at 12.

Critically, Dr. Seal did not merely invoke human-factors concepts and declare the warnings adequate. On the contrary, he identified the relevant criteria, evaluated the safety information against those criteria, and applied them to the circumstances presented here. That is the hallmark of a reliable expert methodology. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

Further, Plaintiffs' attempt to manufacture an oversight by Dr. Seal—based on Mr. Jester's testimony that he read certain *instructions*—ignores Mr. Jester's testimony distinguishing instructions from *warnings*. Mr. Jester expressly testified that he did not read the warnings, including those concerning the fall-arrest harness, and that his harness remained in his truck. Lozada Decl. ¶ 2, Ex. A, Seal Report at

6. Dr. Seal's consideration of Mr. Jester's failure to read the relevant warnings is therefore grounded in Plaintiff's own testimony, not an unsupported premise.

The distinction between instructions, which Mr. Jester claims to have read, and warnings, which he admittedly did not, is significant to the human-factors analysis because warnings are specifically intended to alert users to critical safety risks. Dr. Seal therefore properly considered Mr. Jester's failure to read the warnings in evaluating their effectiveness and his response to the safety information provided.

Further, Plaintiffs improperly attempt to transform NIOSH's[2] treatment of workplace PPE into a governing standard for Dr. Seal's analysis of a fall-arrest harness designed for recreational tree-stand use. However, Dr. Seal did not adopt the NIOSH hierarchy as the foundation of his methodology; he discussed it only because Plaintiffs' mechanical-engineering expert relied on it. Lozada Decl. ¶ 2, Ex. A, Seal Report at 12.

Plaintiffs identify no authority establishing that the NIOSH workplace hierarchy governs or displaces the human-factors principles Dr. Seal applied. His opinions do not depend on NIOSH, but on whether the warnings adequately communicated the hazard, consequences, and means of avoidance under recognized

[2] NIOSH developed the hierarchy for hazardous workplace exposures and worker safety, including employer-administered PPE such as gloves, safety glasses, hearing protection, hard hats, and respirators. *See* Hierarchy of Controls, Nat'l Inst. for OccupationalSafety& Health (Apr. 10, 2024). https://www.cdc.gov/niosh/hierarchy-of-controls/about/index.html.

human-factors criteria. Lozada Decl. ¶ 2, Ex. A, Seal Report at 7-8. Thus, a disagreement over the application of a workplace safety hierarchy raised by Plaintiffs' expert provides no basis to characterize Dr. Seal's human factors methodology as unreliable under Rule 702.

Ultimately, Plaintiffs identify no defect in Dr. Seal's methodology. He applied established human-factors principles to the warnings, instructions, and safety features of the subject Tree Stand and grounded his opinions in case-specific analysis and decades of specialized experience. Plaintiffs' disagreement with his conclusions does not render that methodology unreliable and provides no basis for exclusion under Rule 702.

### b. Dr. Seal's Opinions Fall Squarely Within His Expertise and Do Not Constitute Lay Opinions, Legal Conclusions, or Improper Mechanical Engineering Testimony

Dr. Seal's consideration of Mr. Jester's conduct was an integral part of his human-factors analysis. His expertise encompasses accident and hazard analysis, human performance, product safety, warnings, safety instructions, and personal protective equipment, and his professional work has required him to apply those principles to user conduct and risk mitigation. Lozada Decl. ¶ 2, Ex. A, Seal Report at 1–3. Assessing whether Mr. Jester perceived, understood, and responded to the Tree Stand's warnings and fall-protection instructions falls squarely within Dr.

Seal's specialized expertise. Plaintiffs cannot exclude that analysis simply by labeling it an assessment of Plaintiff's conduct.

The same is true of Dr. Seal's analysis of the ratchet strap. Plaintiffs' attempt to characterize that analysis as outside his expertise ignores the breadth of his qualifications. Dr. Seal holds a Ph.D. in Industrial Engineering specializing in Human Factors and Safety, is a licensed Professional Engineer, and has forty years of experience applying human-factors and safety principles to consumer products, hazard analysis, warnings, safety systems, and risk mitigation. Lozada Decl. ¶ 2, Ex. A, Seal Report at 1–3. His evaluation of how the ratchet assembly, tree diameter, strap expansion, and environmental conditions affect the safe Tree Stand operation therefore falls comfortably within his product-safety and hazard-analysis expertise.

Accordingly, because Dr. Seal is qualified, applied his expertise to the facts of this case, and offers opinions within the scope of that expertise, Plaintiffs' Motion as to Dr. Seal should be denied in its entirety.

**B. Mr. Saunder's Extensive Tree-Stand Engineering Experience Qualifies Him to Offer the Opinions at Issue**

Mr. Saunders is a licensed professional engineer with more than thirty years of engineering experience, including twenty-four years devoted to tree stand accident investigation, failure analysis, and engineering evaluation. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 4. He has conducted more than 300 tree stand engineering investigations and served for eight years on the ASTM F08.16

subcommittee on tree stands. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 4. He has substantial experience with fixed-position tree stands, stick ladders, and the full-body fall-arrest systems designed for their use. *Id*. It is for this reason that he has been accepted as an expert witness by over twenty-eight courts since 2003, including on the very issues he opines on here. Lozada Decl. ¶ 4.

Plaintiffs' reliance on prior decisions involving Mr. Saunders mischaracterizes those rulings by emphasizing discrete exclusions while ignoring that those same courts recognized his qualifications to offer expert testimony concerning tree stand design, safety, use, and alleged failure. *See Wilson v. Summit TreeStands, Inc.*, 2021 WL 5281601, at 7 (E.D. Tenn. Mar. 19, 2021) (recognizing Saunders's extensive tree stand experience and permitting his testimony concerning whether a harness would prevent a similar fall); *Walker v. Alliance Outdoor Group, Inc.*, 2021 WL 6087666, at 1 (E.D. Va. Oct. 26, 2021) (permitting Saunders to testify concerning the tree stand's safety for its intended purpose, compliance with industry standards, and warnings and instructions); *Crews v. Tashin Indus. Corp. USA*, 2020 WL 13891303, at 1 (S.D. Ga. Aug. 18, 2020) (finding Saunders qualified in tree stand accident investigation, hunter safety, safety-harness use, proper assembly, installation and use of tree stands, accident causation, warnings and instructions, and compliance with industry standards).[3]

[3] *See, e.g., Moore v. BPS Direct, LLC*, 2019 WL 2913307, at 8 (D.S.C. July 8, 2019)

Those decisions reinforce, rather than undermine, Mr. Saunders's qualifications to offer the engineering and tree stand opinions presented here.

**a. Mr. Saunders's Opinions Are Relevant to the Issues in Dispute**

Plaintiffs' attempt to sever Mr. Saunders's opinions concerning Mr. Jester's installation and use practices from the incident ignores the engineering question those facts answer. The Tree Stand was designed to be installed at elevation using a climbing aid, secured to the tree through multiple connection points, and used with a full-body fall-arrest system throughout installation, climbing, and use. Lozada Decl. ¶ 5, Ex. C, Tree Stand Manual at 15–20. Mr. Saunders therefore necessarily evaluated the entire installation and use sequence to determine whether the system was configured and used as designed and whether those conditions contributed to the incident. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 11–12, 17, 22–24.

The locking knob illustrates why this evidence matters. Post-incident inspection showed that the knob was unsecured and the bracket had separated from the Tree Stand—conditions Mr. Saunders explains would not occur if the knob had been properly installed. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 22. Likewise,

(permitting Saunders to offer opinions within his mechanical-engineering expertise concerning the tree stand and its alleged failure, as well as the fall-arrest system, warnings, and intended use); *Wilhelm v. Ameristep Corp.*, 2018 WL 6272911, at 14–15 (W.D. Va. Nov. 30, 2018) (finding Saunders's exemplar-testing methodology sufficiently reliable and recognizing his expertise concerning tree stand warnings and instructions).

Plaintiff's failure to review the stick-ladder instructions bears directly on the installation deviations Mr. Saunders identified, including positioning the ladder and Tree Stand so that Plaintiff had to step up onto the platform when the instructions required stepping down onto it. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 17.

Plaintiff's inspection and maintenance practices are equally relevant. *Id*. The instructions required inspection of the system's components before use, and Plaintiff's failure to do so informed Mr. Saunders's analysis of the installation. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 6, 17. Plaintiff's decision to leave the Tree Stand exposed to the elements for approximately a year, contrary to the manufacturer's instructions, also informed his assessment of the product's condition and use at the time of the incident. *Id*. at 6, 17.

Taken together, Plaintiff's installation, inspection, maintenance, and use practices provided the factual foundation for Mr. Saunders to assess the Tree Stand's performance, rule out a product defect, and identify the physical mechanism that initiated the fall. These are not collateral observations; they are integral to his engineering analysis of causation. At most, Plaintiffs' criticisms concern the factual bases and sources Mr. Saunders considered in reaching his opinions, not their admissibility under Rule 702. Such challenges go to the weight, not admissibility, and are properly addressed through cross-examination. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988); *see also, Viterbo v. Dow Chem. Co.*, 826

F.2d 420, 422 (5th Cir. 1987) (Challenges to the bases of an expert's opinion generally go to weight, not admissibility, and are for the jury to consider).

Accordingly, the facts Mr. Saunders considered are causally connected to the incident, provide a proper foundation for his opinions, and provide no basis for exclusion under Rule 702.

**i. Mr. Saunders Is Qualified to Offer Opinions Concerning Warnings, Instructions, and Their Application to Product Use**

Mr. Saunders's opinions concerning warnings and instructions fall within his specialized tree stand engineering and safety expertise. His decades of experience investigating tree stand accidents, evaluating tree stands, and serving on the ASTM tree stand subcommittee qualifies him to assess whether the instructions adequately communicate safe use. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 4.

A federal court addressing this same challenge recognized Mr. Saunders's qualifications and expertise in evaluating tree stand warnings and found such testimony relevant and helpful to the trier of fact. *Wilhelm v. Ameristep Corp.*, 2018 WL 6272911, at 15 (W.D. Va. Nov. 30, 2018). Mr. Saunders applies that expertise to the manufacturer's instructions, applicable industry standards, physical evidence, and the manner in which the product was actually installed and used.

Further, Plaintiffs' insistence that Mr. Saunders should have disregarded the manual undisputedly provided with the product is untenable.[4] His analysis applies his specialized expertise to all the evidence presented and will assist the jury in understanding the technical safety information governing the operation of the subject Tree Stand. Accordingly, Plaintiffs identify no basis to exclude these opinions under Rule 702.

**ii. Mr. Saunders's Opinions Apply His Specialized Expertise and Do Not Constitute Legal Conclusions or Lay Opinions**

Mr. Saunders's opinions do not become impermissible legal conclusions simply because they address Plaintiff's conduct or role in the incident. Rule 704 permits expert opinions that embrace an ultimate issue, so long as the expert does not instruct the jury on the law or direct its application. *Cephus v. CSX Transp., Inc.*, 2017 WL 5644371, at 2 (N.D. Ga. Jan. 13, 2017).

Mr. Saunders's opinions that Plaintiff failed to use available safety measures or properly use the stick ladder, Tree Stand, harness, and fall-protection system reflect his application of specialized tree stand engineering and safety expertise to

[4] Plaintiffs' contention that Mr. Saunders was required to analyze only Academy's 2020 online manual rests on a factual premise the record does not support. That was not the manual Mr. Jester received with the product or was instructed to use. Nor did Mr. Jester testify that he consulted Academy's website or its 2020 manual when installing the subject Tree Stand. To the contrary, when asked where he obtained the online instructions, he testified, "I believe it was GameWinner.com." Lozada Decl. ¶ 6, Ex. D, Jester Dep. at 91:20–23.

the circumstances of the fall. He does not define a legal standard, instruct the jury on Georgia law, or direct a particular legal result. His opinions apply specialized knowledge to Plaintiff's conduct and product use without defining a legal standard or directing the jury's resolution of any claim or defense. They are therefore proper under Rules 702 and 704 and should not be excluded.

**iii. Mr. Saunders's Slip Analysis Is Grounded in Methodological Testing and the Physical Evidence**

Mr. Saunders's opinion is grounded in his testing of the subject Tree Stand and the physical mechanics of the fall. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 7, 29–30. His testing was extensive, case-specific, incorporated testable methodology, controlled conditions, and objective measurements designed to replicate and evaluate the conditions relevant to Plaintiff's alleged fall. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 43–47.

Mr. Saunders performed exemplar testing of the Hang-On Bracket assembly using a universal testing machine, applying controlled loads perpendicular to the tree to replicate the direction of loading experienced during normal use. *Id*. at 43–44. He tested the assembly under multiple ratchet strap configurations, including two full wraps under both secure and loose conditions, one full wrap, one-half wrap, one-quarter wrap, and zero wraps. *Id*. at 43–47. The testing applied loads up to 900 pounds, representing 129% of the expected worst-case static load, while recording load, displacement, and time. *Id*. at 43. These tests allowed Mr. Saunders to evaluate

the performance of the Hang-On Bracket and Ratchet Strap under varying configurations and loads and compare those results to the physical evidence from the subject Tree Stand. Id. at 43–47. Mr. Saunders's reference to a loss of balance or slip factor into his initiation and fall analysis, while his ratchet strap evaluation addresses the mechanical performance of the Tree Stand under the configuration reflected by the physical evidence.

His testing demonstrated that the Tree Stand would not have supported Plaintiff's weight in the configuration reflected by the physical evidence, providing a basis for his opinion that a slip or loss of balance could have initiated the fall. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 7, 47. Thus, his opinion is grounded in the tested mechanical behavior of the Tree Stand and the evidence from the incident, not speculation.

**iv. Mr. Saunders Is Qualified to Opine on the Fall-Arrest System and His Opinions Are Supported by His Testing and Experience and Will Assist the Trier of Fact**

Mr. Saunders's fall-arrest opinions are grounded in specialized experience and testing, not *ipse dixit*. His laboratory is dedicated in part to evaluating full-body harness fall-arrest systems used with tree stands, and courts have recognized his extensive experience with tree stands and permitted him to testify that use of a safety harness would have prevented a fall. *See Moore, 2019 WL 2913307, at 8* (permitting Saunders to opine whether use of the tether and fall-arrest system would have

prevented the plaintiff's fall because those opinions were based on measurements and testing); *Wilhelm, 2018 WL 6272911, at 14–15* (permitting Saunders's opinion that proper use of the full-body fall-arrest system would have prevented the plaintiff's fall).

Plaintiffs' reliance on his lack of biomechanical expertise therefore misses the point because the challenged opinion concerns the operation and effectiveness of the fall-arrest system, a subject within Mr. Saunders's demonstrated expertise.

Mr. Saunders's opinions concerning access to the warnings and instructions and deviations from the product's intended use are integral to evaluating how the Tree Stand was designed to function versus how it was actually installed and used. Drawing on his extensive experience in tree-stand safety, installation, warnings, and product evaluation, he explains the significance of those deviations and their impact on safe operation. Lozada Decl. ¶ 3, Ex. B, Saunders Report at 8. This analysis applies specialized knowledge to the evidence rather than merely reciting it. His opinions therefore will assist the trier of fact and are admissible under Rule 702.

### C. Mr. Smith's Extensive Tree-Stand Safety and Accident-Investigation Experience Qualifies Him to Offer His Opinions

Mr. Smith has more than three decades of specialized experience in hunter education, tree stand safety, and hunting-accident investigation. A Certified Hunter Education Instructor since 1991, he is also certified to teach tree-stand and hunting-accident investigation and hunter-education instructor training. He teaches tree stand

safety and hunting-accident reconstruction to law-enforcement officers and hunter-education instructors nationwide. Lozada Decl. ¶ 7, Ex. E, Smith CV at 1–2. His experience includes more than 250 tree stand and hunting-accident reconstructions and tests involving tree stands and safety harnesses, personally installing more than 2,000 tree stands, and reviewing more than 200 instruction manuals involving tree stands, safety harnesses, and other hunting equipment. *Id*. at 1-2. Most recently, he has taught tree stand safety and accident-investigation courses to volunteer hunter-education instructors and wildlife officers in multiple states, contributed to the International Hunter Education Association's Accident Investigation School, and assisted in revising its tree stand safety curriculum. *Id*. at 3.

#### i. Mr. Smith's Experience-Based Methodology Is Reliable and Properly Applied to the Facts

Mr. Smith's extensive experience in hunter safety, tree stand accident investigation and reconstruction, warnings and instructions, and proper tree stand use provides a reliable foundation for his opinions. He applies that specialized knowledge to the case-specific evidence, evaluating Plaintiff's conduct against established tree-stand safety principles, manufacturer warnings and instructions, and applicable industry standards. His analysis considers the warnings governing the subject Tree Stand—including those addressing fall-arrest protection, installation, climbing, and maintenance—and explains their safety significance in light of Plaintiff's conduct. Lozada Decl. ¶ 8, Ex. F, Smith Report at 9–13. His decades of

investigating tree stand accidents and developing and teaching tree stand safety provides the specialized knowledge necessary to apply that framework here.

Courts likewise recognize that such specialized experience supports expert testimony on tree-stand safety. *See McAllister v. Savage Arms Inc.*, No. 5:21-CV-00123-TKW-MJF, 2023 WL 10406718, at 3–4 (N.D. Fla. Oct. 23, 2023) (finding tree stand safety expert qualified based on decades of accident-investigation experience, involvement in establishing industry safety standards, and specialized knowledge of how tree stand features impact hunter safety).[5]

Mr. Smith's TMA affiliation does not undermine the reliability of his methodology or factual foundation. His opinions are grounded on his review of the case-specific evidence, including Plaintiff's testimony, the Tree Stand and accident site, the Tree Stand and Stick Ladder manuals, on-product warnings, safety video, photographs, and the parties' expert materials. Lozada Decl. ¶ 8, Ex. F, Smith Report at 1–5. He evaluates that evidence under established tree stand safety principles, manufacturer instructions, and industry standards governing tree stand use and fall-arrest systems. Lozada Decl. ¶ 8, Ex. F, Smith Report at 9–11.

[5] *McAllister* is particularly instructive because the tree stand safety expert was Mr. Smith's father, whose professional background similarly included decades of tree stand accident investigation, hunter safety, and participation in establishing industry safety standards. The court denied the *Daubert* challenge, concluding that this experience qualified him to offer opinions concerning tree stand and hunter safety. *McAllister*, 2023 WL 10406718, at 3–4.

Courts routinely permit experts to apply this type of specialized knowledge to tree-stand accidents, including regarding safety practices, warnings and instructions, proper product use, and fall-arrest systems. *See, e.g.*, *McCulloch v. Tahsin Indus. Corp. USA*, 2022 WL 4484214 (W.D. Va. Sept. 27, 2022); *Bradley v. Ameristep, Inc.*, 2014 WL 6474913 (W.D. Tenn. Apr. 14, 2014); *Johnson v. Serv. Tool Co., LLC*, 2015 WL 7760480 (E.D. Mich. Nov. 30, 2015); *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254 (D. Minn. 2009).

Nor was engineering testing necessary or appropriate for Mr. Smith’s opinions. He does not purport to be a mechanical engineer and offers no opinions concerning component failure, mechanical forces, or other engineering matters. Instead, he confines his opinions to tree-stand and hunter safety, fall protection, proper product use, and compliance with established safety practices and instructions. Lozada Decl. ¶ 8, Ex. F, Smith Report at 77–89. His opinions therefore remain within his expertise, rest on reliable methodology, and provide no basis for exclusion under Rule 702. Plaintiffs therefore identify no basis to find Mr. Smith’s methodology unreliable merely because of his TMA affiliation.

**ii. Mr. Smith’s Opinions Are Directly Relevant to the Incident and Will Assist the Trier of Fact.**

The facts Plaintiffs challenge directly inform Mr. Smith’s evaluation of whether Plaintiff’s installation, access, inspection, and maintenance practices complied with established tree stand safety principles and the manufacturer’s

instructions. Plaintiffs' installation of the Stick Ladder bears on whether the tree stand system was configured and accessed as intended, while carrying the Tree Stand up the ladder bears on safe installation practices at elevation. Lozada Decl. ¶ 8, Ex. F, Smith Report at 86–88. His practice of leaving tree stands exposed to the elements for extended periods is likewise relevant because it directly contravened the manufacturer's maintenance and storage instructions. *Id*. at 87.

Together, these facts enable Mr. Smith to explain how Plaintiff's installation, use, and maintenance practices contributed to the conditions surrounding his fall. His opinions will assist the jury in evaluating Plaintiff's conduct in light of the applicable warnings, instructions, and established tree-stand safety practices. His opinions are therefore relevant and should be admitted in full.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Exclude the Opinions and Testimony of Defendants' Experts Dennis J. Seal, Ph.D., P.E., George M. Saunders, Jr., P.E., C.F.E.I., and Henry David Smith. Each expert is qualified in his respective field, applies reliable principles and methods to the facts and evidence of this case, and offers opinions that will assist the trier of fact in resolving the issues presented. Plaintiffs' disagreements with those opinions or their factual bases do not warrant exclusion under Rule 702.

Dated: September 18, 2026

Respectfully submitted,

x ______________________

Miguel Lozada, ESQ
(*Admitted Pro Hac Vice*)
GORDON REES SCULLY MANSUKHANI, LLP
1 Battery Park Plaza, 28th FL
New York, N.Y. 10004
(212) 453-0765 (Telephone)
mlozada@grsm.com
*Counsel for Defendants INNOPOWER, INC., ACADEMY LTD. d/b/a ACADEMY SPORTS + OUTDOORS*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of the foregoing **DEFENDANTS INNOPOWER, INC. AND ACADEMY LTD. D/B/A ACADEMY SPORTS + OUTDOORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT THE REPORTS AND TESTIMONY OF DENNIS J. SEAL, PH.D., P.E., GEORGE M. SAUNDERS, JR., P.E., C.F.E.I., AND HENRY DAVID SMITH** upon all parties of record to this matter via Statutory Electronic Service, as follows:

**CONN LAW, LLC**
ANDREW J. CONN
Georgia Bar No. 732541
Post Office Box 8031
Savannah, Georgia 31412
(912) 373-8642 (phone)
(912) 210-5170 (fax)
andy@connlawfirm.com
Attorney for Plaintiffs

**WADE GRUNBERG & WILSON, LLC**
JONATHAN D. GRUNBERG
Georgia Bar No. 869318
729 Piedmont Avenue NE
Atlanta, GA 30308
(404) 445-8363 (tel)
(470) 970-4303 (fax)
jgrunberg@wgwlawfirm.com
Attorney for Plaintiffs

Dated: September 18, 2026

*/s/Miguel Lozada*
Miguel Lozada